

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00395-CV

RICHARD F. WALSH, MEDICA-
RENTS CO., LTD., AND MED-RCO,
INC.

APPELLANTS

V.

WOUNDKAIR CONCEPTS, INC.,
DAN ANDERSON, AND KIM
ANDERSON

APPELLEES

----------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 017-217058-06

----------

## MEMORANDUM OPINION[1] ON
## RECONSIDERATION EN BANC

----------

Appellants Richard F. Walsh, Medica-Rents Co., Ltd., and MED-RCO, Inc.

filed a motion for reconsideration en banc of our opinion that issued on

February 5, 2015.  We deny the motion, withdraw our opinion and judgment

[1]*See* Tex. R. App. P. 47.4.

dated February 5, 2015, and substitute the following to address several arguments that Appellants raised in the motion.

On December 18, 2014, we notified Appellants of our concern that we lack jurisdiction over this appeal because the notice of appeal was due November 26, 2014, but was not filed until December 18, 2014. *See* Tex. R. App. P. 25.1(b), 26.1(a). Appellants admitted in their response that they had miscalculated the due date for the notice of appeal,[2] but they argued that we have jurisdiction over this appeal because, as demonstrated by a number of actions that they had taken and communications that they had made after the trial court signed the final judgment, they had clearly expressed an intent to appeal.[3] In light of a letter that Appellants filed with the trial court on December 5, 2014, a date that was within rule 26.3's fifteen-day extension window, they moved that we extend the time to file their notice of appeal and that their December 18, 2014 notice serve to amend the December 5, 2014 letter. *See* Tex. R. App. P. 26.3; *Verburgt v. Dorner*, 959 S.W.2d 615, 617 (Tex. 1997). Appellees Woundkair Concepts, Inc., Dan Anderson, and Kim Anderson replied that this appeal should be dismissed

---

[2]Appellants acknowledged that "counsel mistakenly believed that the formal notice of appeal was due 15 days after the trial court lost its plenary power on December 11, 2014 and had prepared to file the formal notice by December 26, 2014."

[3]According to Appellants, "[Appellees] and the trial court knew long before the formal notice of appeal was due that [Appellants] intended to appeal."

2

because Appellants did not timely file any document in a bona fide attempt to invoke this court's jurisdiction.  We agree with Appellees.

Consistent with the policy of applying rules of procedure liberally to reach the merits of the appeal whenever possible, a court of appeals has jurisdiction over an appeal if the appellant timely files an instrument in a bona fide attempt to invoke the appellate court's jurisdiction.  *Warwick Towers Council of Co-Owners v. Park Warwick, L.P.*, 244 S.W.3d 838, 839 (Tex. 2008); *see In re J.M.*, 396 S.W.3d 528, 530–31 (Tex. 2013).

Appellants argue that they timely perfected this appeal by requesting a copy of the reporter's record.  The notice is directed to counsel for Appellants and states, among other things, that "you are hereby notified that request has been made for a transcript."  If anything, the notice evidenced Appellants' desire to obtain the reporter's record; nothing therein evidenced a bona fide attempt to invoke our appellate jurisdiction.  *See Tex. Animal Health Comm'n v. Nunley*, 598 S.W.2d 233, 234 (Tex. 1980); *see also Park Warwick, L.P.*, 244 S.W.3d at 839.

Appellants argue that they timely perfected this appeal by filing a motion for judgment notwithstanding the verdict, a motion for new trial, and a supplement to those motions "in order to preserve error and identify the issues [that they] intended to raise on appeal."  However, preserving error does not simultaneously perfect an appeal, and unlike in *J.M.*, in which the appellant filed a "Motion for New Trial or, in the Alternative, Notice of Appeal," which in part indicated an attempt to invoke the appellate court's jurisdiction, nothing in the

3

postjudgment motions filed by Appellants represented a bona fide attempt to invoke our jurisdiction. *See J.M.*, 396 S.W.3d at 529–30. This case instead falls under the rule elaborated in *In re K.A.F.*, in which the supreme court concluded that "filing a motion for new trial may not be considered a bona fide attempt to invoke the appellate court's jurisdiction." 160 S.W.3d 923, 924 (Tex. 2005).

Appellants further argue that they timely perfected this appeal by filing a certificate of written discovery and by serving responses to postjudgment discovery requests that, among other things, indicated both a willingness and the ability to post a supersedeas bond "if the [trial court] denies" their postjudgment motions. Appellants rely on *Gregorian v. Ewell*, a case in which we held that the appellants had invoked the jurisdiction of this court by filing a cash deposit in lieu of a supersedeas bond within the period required for perfecting their appeal. 106 S.W.3d 257, 260 (Tex. App.—Fort Worth 2003, no pet.). However, unlike in *Gregorian*, Appellants did not somehow suspend the judgment during the time for filing the notice of appeal, and we decline to over-extend *Gregorian*'s limited holding to everyday situations, such as this one, in which one party merely notifies another party of its willingness to supersede a judgment if the trial court denies its postjudgment motions. Appellants direct us to nothing in their discovery-related documents that constitutes a bona fide attempt to invoke our appellate jurisdiction. *See Park Warwick, L.P.*, 244 S.W.3d at 839.

Appellants argue in their motion for reconsideration en banc that we improperly seize on an immaterial distinction between this case and *Gregorian* by

4

observing that Appellants did not suspend the judgment. They also contend that the critical factor in *Gregorian* was not that the judgment had been superseded, "but rather that the wording in a later-filed document (an agreed order) confirming the sufficiency of the cash deposit 'expressly referr[ed] to Appellants' *intent* to appeal." Appellants are incorrect on both counts. The filing of a cash deposit in lieu of a bond was the critical fact underlying *Gregorian*'s holding that the appellants had perfected an appeal. 106 S.W.3d at 259–60. Indeed, in tremendously clear language, the introductory paragraph stated:

> In this case, we must determine whether the filing by Appellants of their cash deposit in lieu of a supersedeas bond within the period for perfecting appeal constituted a bona fide attempt to appeal invoking this court's jurisdiction. This specific question has not been addressed by the Texas courts. We hold that Appellants made a bona fide attempt to appeal by filing a cash deposit in lieu of supersedeas bond during the relevant time period and thus invoked appellate court jurisdiction.

*Id.* at 258. Moreover, suspension of the judgment is not an immaterial distinction; significantly, the filing of a cash deposit in *Gregorian* represented an action that the appellants in that case would not have taken had they not sought to invoke the appellate court's jurisdiction.[4] Here, Appellants filed and served discovery-related documents as part of the postjudgment discovery process.

---

[4]The same can be said for the documents that were considered in the opinions that *Gregorian* cited. *See In re M.A.H.*, 104 S.W.3d 568, 570 (Tex. App.—Waco 2002, no pet.) (affidavit of indigence); *Foster v. Williams*, 74 S.W.3d 200, 202–03 (Tex. App.—Texarkana 2002, pet. denied) (docketing statement).

5

Appellants argue that they timely perfected this appeal because of statements that were made at a hearing in the trial court on November 25, 2014, and that "repeatedly referred to the appeal that [Appellants] would seek if the trial court denied" their postjudgment motions. But an oral statement is not a filed document, *see Sweed v. Nye*, 323 S.W.3d 873, 875 (Tex. 2010) ("[T]his Court has consistently held that a timely *filed* document, even if defective, invokes the court of appeals' jurisdiction." (emphasis added)), and Appellants' conditional statements that indicated the potential for an appeal in the future were insufficient to invoke this court's appellate jurisdiction. *See, e.g.*, *Southerland v. Wright*, No. 07-06-00147-CV, 2006 WL 1680858, at *1–2 (Tex. App.—Amarillo June 15, 2006, pet. denied); *Yancy v. Wolfe*, 523 S.W.2d 516, 517–18 (Tex. App.—Fort Worth 1975, writ ref'd n.r.e.).

Appellants additionally argue that they perfected this appeal by sending a letter to the trial court that, among other things, "address[ed] some procedural and appellate questions that the Court posed after the hearing [on Appellants' postjudgment motions] had concluded." After (1) correcting several instances in which Appellees had purportedly misconstrued the record and (2) addressing Appellees' "new arguments" about lost profits, Appellants (3) explained in the letter that "[t]he Court now has three options":

    1.    The Court can enter an order denying the Motion;

    2.    The Court can do nothing. After December 11, 2014, the Court's plenary power will expire, and *the judgment previously entered will become final and appealable*; or

3.	The Court can grant the motion for JNOV.

If the Court chooses options 1 or 2 above, *then Defendants will be forced to appeal* and incur unnecessary expenses.  In the event the Court of Appeals holds that the Court erred in denying the Motion, the case will likely be remanded for a new trial. [Emphasis added.]

Construed in its entirety, the December 5, 2014 letter is nothing more than a further attempt to convince the trial court to grant Appellants' postjudgment motions.  This includes Appellants' unambiguous, conditional statement that they "will be forced to appeal" if their motion is not granted.  By advising the trial court of the specific action that they would take if the trial court did not grant their postjudgment motion, Appellants did not concurrently make any bona fide attempt to invoke this court's appellate jurisdiction.  *See Southerland*, 2006 WL 1680858, at *2 ("[Appellant] used the January 19th letter to threaten appeal as a means of securing relief from the trial court.  The document was a trial tactic made to avoid appeal, not a *bona fide* attempt to invoke our jurisdiction.").

Appellants argue on reconsideration that we should not rely on *Southerland* because the opinion is grounded on indistinguishable reasoning that the supreme court rejected in *J.M.*  Appellants specifically target the portions of those two opinions that describe the statements contained in the documents at issue in those cases as conditional in nature.  Appellants overlook a key difference between *Southerland* and *J.M.*  The most relevant passage contained in the letter at issue in *Southerland*, which was addressed to the trial court, stated

7

that "[i]f you don't grant the Motion for New Trial or sign the remittitur order then my client will appeal and I estimate that will cost him over $10,000 because, as I mentioned I don't do appeals." *Id.* at *1. The court of appeals concluded that the letter "was a trial tactic made to avoid appeal, not a *bona fide* attempt to invoke" the appellate court's jurisdiction. *Id.* (emphasis in original). By contrast, the "Motion for New Trial or, in the Alternative, Notice of Appeal" that the petitioner filed in *J.M.* "indicated that [she] was attempting to invoke the appellate court's jurisdiction" for the reasons that we discuss below. 396 S.W.3d at 530. Thus, in *Southerland*, the appellant sought *to avoid* an appeal, but in *J.M.*, the petitioner sought *to perfect* an appeal. This is what distinguishes *Southerland* from *J.M.*, and it is why we properly cite *Southerland*—like the appellant in that case, Appellants in this case sought to avoid an appeal and, for that reason, conditioned their statements about an appeal on a negative outcome in the trial court.

Arguing that they perfected this appeal, Appellants direct us to an unfiled letter that Appellees drafted and is dated December 15, 2014, and to discussions—or "active negotiations"—between the parties that occurred that same week, both of which regarded suspension or enforcement of the judgment. However, among other problems, the letter and negotiations occurred after the window for a rule-26.3 extension had already closed (December 11, 2014), and neither the letter nor the negotiations between the parties constituted a bona fide

8

attempt to invoke this court's appellate jurisdiction. *See Park Warwick, L.P.*, 244 S.W.3d at 839.

Appellants rely heavily on *J.M.*, but it is readily distinguishable. There, the "Motion for New Trial or, in the Alternative, Notice of Appeal" that the petitioner filed in the trial court constituted a bona fide attempt to invoke the appellate court's jurisdiction because (1) it stated that the appellant "wishes to appeal this case to" the court of appeals, (2) it was partly entitled a notice of appeal, and (3) the notice of appeal portion specifically addressed the appellate court. *J.M.*, 396 S.W.3d at 530. Here, Appellants' December 5, 2014 letter (1) contains no language, however worded, demonstrating, in any way, that Appellants "wish[] to appeal this case to" the court of appeals, (2) it is not partly entitled a notice of appeal, and (3) there is no portion that addresses this court.

On reconsideration, Appellants take issue with the three distinctions that we draw between *J.M.* and this case. Regarding the first, Appellants argue that there is no meaningful distinction between the language contained in their December 5, 2014 letter that they "will be forced to appeal" if their postjudgment motions are denied and the language contained in the document in *J.M.* stating that the appellant "wishes to appeal." The distinction has considerable meaning. As explained, in *J.M.*, the petitioner sought to perfect an appeal; in this case, Appellants sought to avoid an appeal, explaining that a costly appeal, and potential reversal and remand, would follow if the motions were denied.

Regarding the second distinction, Appellants argue that including "notice of appeal" in the title of the document is not required. We certainly agree, but we draw the distinction only because as part of its holding that the petitioner had invoked the jurisdiction of the court of appeals, the supreme court in *J.M.* relied on the fact that the document at issue there was partly entitled a notice of appeal. *See id.* ("The document stated that Spencer 'wishes to appeal this case to' the court of appeals; *further, it was partly entitled a notice of appeal.*") (emphasis added).

Regarding the third distinction, Appellants argue that their December 5, 2014 letter does indeed address our court because it states that "[i]n the event the Court of Appeals holds that the Court erred in denying the Motion, the case will likely be remanded for a new trial." The statement mentions our court; it does not address it.

Further comparing this case to *J.M.*, Appellants argue that like the petitioner in that case, who advanced her notice of appeal "in the alternative" to her motion for new trial, Appellants "gave, in substance, an identical statement of intent: it would appeal if the trial court denied its postjudgment motions." The petitioner in *J.M.* may have advanced her notice of appeal in the alternative to her motion for new trial, but she did not state in her filing that she *would* appeal *if* the trial court denied her motion for new trial; she flat out communicated that *she appeals*—an unambiguous attempt to invoke the appellate court's jurisdiction. Appellants did no such thing.

10

Finally, Appellants place a considerable amount of emphasis on the language in *J.M.* stating that the petitioner in that case "expressed an intent to appeal to the court of appeals." *Id.* at 531. They contend that they perfected this appeal because they too "expressed an intent to appeal." Appellants did not express an intent to appeal like the petitioner in *J.M.* expressed an intent to appeal. Appellants' expressions demonstrated only that they *possessed* an intent to appeal if their postjudgment motions were denied; the petitioner's expressions in *J.M.* actually *manifested* her intent to appeal through the timely filing of a document in a bona fide attempt to invoke the appellate court's jurisdiction. The latter expression perfected an appeal; the former did not.[5] To the extent that Appellants urge us to apply a standard other than the clearly defined, workable, and well-established bona-fide-attempt-to-invoke standard that we are bound by, we decline to do so.

Because Appellants failed to timely file any instrument in a bona fide attempt to invoke this court's appellate jurisdiction, including the December 5,

---

[5]In our original memorandum opinion, we stated in this footnote that "a party can possess an intent to appeal all day and night long, but until it actually manifests that intent by timely filing a document in a bona fide attempt to invoke an appellate court's jurisdiction, it is meaningless. *See* Tex. R. App. P. 25.1(a) (stating that "[a]n appeal is perfected when a written notice of appeal is filed with the trial court clerk," not when a party merely possesses an intent to appeal)." Contrary to Appellants' argument on reconsideration en banc, we did not, by this statement, "adopt[] an unduly restrictive standard for invoking appellate court jurisdiction." Our intent was to clarify what Appellants now expressly acknowledge on reconsideration, that "subjectively possessing a never-expressed intent to appeal is insufficient to invoke appellate jurisdiction."

11

2014 letter upon which they rely for purposes of obtaining an extension to file the notice of appeal, we have no choice but to deny Appellants' motion for extension of time and to dismiss this appeal for want of jurisdiction. *See* Tex. R. App. P. 43.2(f).

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  MEIER, GABRIEL, AND SUDDERTH, JJ.

DELIVERED:  April 2, 2015